| UNITED STATES BANKRUPTCY COURT | FOR PUBLICATION |
| SOUTHERN DISTRICT OF NEW YORK | |

-----------------------------------------------------------------x

In re:                                                Chapter 7

VINCENT D'ARATA,                                      Case No. 18-10524-shl

                                        Debtor.

-----------------------------------------------------------------x

## MEMORANDUM DECISION REGARDING
## THE DISGORGEMENT OF ATTORNEY'S FEES

**RAGUES PLLC**
*Counsel for the Debtor*
33 West 19th Street, Fourth Floor
New York, New York 10011
  By:   Raymond Ragues, Esq.

**TOGUT, SEGAL & SEGAL LLP**
*Counsel for the Chapter 7 Trustee*
One Penn Plaza, Suite 3335
New York, New York 10119
  By:   Albert Togut, Esq.
         Neil Berger, Esq.
         Amanda C. Glaubach, Esq.

**OFFICE OF THE UNITED STATES TRUSTEE**
*William K. Harrington, United States Trustee for Region 2*
201 Varick Street, Suite 1006
New York, New York 10014
  By:   Andrew D. Velez-Rivera, Esq.

**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

      Before the Court is the Order to Show Cause, dated April 19, 2018 [ECF No. 21], issued to Raymond Ragues, Esq. as counsel for Vincent D'Arata, the debtor in the above-captioned Chapter 7 case (the "Debtor" or "Mr. D'Arata"). The Court issued the Order to Show Cause based on two letters from the Debtor that complained about the conduct of his counsel. *See* Letter of Vincent D'Arata, dated April 2, 2018 [ECF No. 13]; Letter of Vincent D'Arata, dated

April 4, 2018 [ECF No. 19]; Statement of United States Trustee in Support of Order to Show Cause re: Attorney Raymond Ragues ¶¶ 10, 18, 20 ("UST Statement") [ECF No. 25]; Chapter 7 Trustee's Statement in Connection with the Court's April 19, 2018 Order to Show Cause ¶ 9 ("Chapter 7 Trustee Statement") [ECF. No. 26]. In his letters, Mr. D'Arata complained that, among other things, his counsel had filed incorrect documents on his behalf, notwithstanding Mr. D'Arata's repeated attempts to correct the errors. See ECF Nos. 13, 19. Based on the allegations in the letters, the Court issued the Order to Show Cause whether Mr. Ragues should be required to return the fee that he charged the Debtor for the filing of the bankruptcy case. As it turns out, the incorrect filings were only part of a much more pervasive problem that included the use of so-called appearance counsel that effectively left the Debtor without representation at his meeting of creditors under Section 341 of the Bankruptcy Code. Given all the problems caused by Debtor's counsel here—as further set forth below—counsel must return the fee that he charged the Debtor. The Court writes this opinion to remind attorneys practicing in this jurisdiction of their ethical obligations to their debtor clients and to avoid the use of appearance counsel as a way of passing the buck on those obligations.[1]

## BACKGROUND

There is nothing about this Chapter 7 case that suggests it would be unusually difficult. In late February 2018, the Debtor filed a voluntary petition (the "Petition") for relief under Chapter 7 of the Bankruptcy Code, along with, among other things, his initial set of Schedules of Assets and Liabilities (the "Schedules"), Statement of Financial Affairs and Creditor Matrix [ECF No. 1]. The purpose of the Schedules in a bankruptcy case is to list the types of assets that

---

[1] The Court previously issued a bench ruling requiring the turnover of the fee charged to the Debtor. See Hr'g Tr. 32:7-9, May 1, 2018 [ECF No. 31]. But the Court made clear at the hearing that, given the importance of the issue, the Court would also issue a written decision. See id. at 33:12-15; see also Order Requiring Return of Fee Payments to Debtor Pursuant to Bankruptcy Code § 329(b), dated June 27, 2018 [ECF No. 32].

a debtor has in its possession or would like to claim as exempt. Consistent with the practice in Chapter 7 cases, a Chapter 7 trustee was appointed to administer the Debtor's case; the trustee appointed here was Albert Togut, Esq. (the "Chapter 7 Trustee").

Raymond Ragues, Esq. of Raymond Ragues PLLC is the attorney who filed the case for the Debtor. *See* Petition at 7. Prior to the filing, Mr. D'Arata paid Mr. Ragues a fee of $900 for his legal services in the case. *See* Disclosure of Compensation of Attorney for Debtor [ECF No. 1]. The Debtor never met Mr. Ragues in his office, but instead communicated with him online and over the telephone. *See* UST Statement ¶ 5.

Mr. D'Arata lives on a monthly income of $1,435.00, with his monthly expenses exceeding his income by $20. *See* Schedules I and J [ECF No. 1]. Mr. D'Arata spends 65% of his monthly income ($953) on rent, food, and basic supplies alone. *See id.*[2] Given his financial circumstances, it took Mr. D'Arata a year to save the money to pay Mr. Ragues' fee. *See* UST Statement ¶ 16. Mr. D'Arata paid the $900 legal fee in installments over eight months, with the last installment paid in November 2017, some three months before the bankruptcy case was filed. *See* Letter of Vincent D'Arata, dated April 2, 2018.

As is customary in Chapter 7 cases, the Debtor was scheduled to appear at a meeting of creditors and be questioned under oath by the Chapter 7 Trustee about his case, including with regard to the Debtor's assets and liabilities and the consequences of seeking a discharge. *See* 11 U.S.C. § 341 (providing for an oral examination of the debtor at a meeting of creditors). These so-called 341 meetings are not presided over—or even attended—by the Court, but rather are run by the Chapter 7 trustee appointed in the case. *See* 11 U.S.C. § 341(c) (noting that a court may

---

[2] Due to his financial circumstances, Mr. D'Arata also applied for a waiver of the fee for filing this Chapter 7 case, which was subsequently granted by the Court. *See* Order on the Application to Have the Chapter 7 Filing Fee Waived [ECF No. 9].

3

not preside at or attend a 341 meeting).[3] As a Chapter 7 case is often administered without the need for the Debtor to appear before the Court, a 341 meeting may be the most significant event in such a case for an individual debtor, particularly in a no-asset case such as this one. *See* Chapter 7 Trustee's Report of No Distribution, docket entry dated June 7, 2018.[4] No-asset cases are usually more streamlined because the liquidation of a debtor's estate produces no assets from which creditors can recover value, or there is such low value recovered that only administrative costs—generally attorneys' and trustees' fees—can be paid. *See* Report of the Commission on the Bankruptcy Laws of the United States, H.R. Rep. No. 137, pt.1, at 3-4 (July 1973), *reprinted in* B Collier on Bankruptcy App. Pt. 4(c).

But notwithstanding the straightforward nature of Mr. D'Arata's case, difficulties arose almost immediately. The 341 meeting in this case was first convened on March 28, 2018 (the "First Meeting"), but Mr. Ragues did not appear to represent the Debtor. *See* UST Statement ¶ 14. Instead, an appearance was made on behalf of the Debtor by an attorney named Kenneth Zweig, Esq. *See id.* But Mr. Zweig was not hired by Mr. D'Arata. Rather, he came to the First Meeting as so-called "appearance counsel"—meaning that he appeared as counsel on behalf of Mr. Ragues and his firm even though Mr. Zweig was not employed at Mr. Ragues' firm.[5] *See*

---

[3] Several decades ago, a Commission Report on Bankruptcy Law survey determined that it was highly inefficient for judges to handle certain of the paperwork and procedural aspects of consumer bankruptcy cases. *See* Report of the Commission on the Bankruptcy Laws of the United States, H.R. Rep. No. 137, pt.1, at 6 (July 1973), *reprinted in* B Collier on Bankruptcy App. Pt. 4(c). The work was not judicial in nature and was administratively-focused, and the involvement of judges would result in the wasting of judicial resources. *See id.* Furthermore, the Commission found that it was important that judges do not participate in 341 meetings to avoid any appearance of bias. *See id.*

[4] On June 7, 2018, the Chapter 7 Trustee electronically uploaded the report of no distribution of assets in the Debtor's case. In the Southern District of New York, Chapter 7 trustees electronically upload such reports to the Case Management/Electronic Case Filing system, but the reports are not assigned a docket number.

[5] Mr. Zweig did not disclose whether he was compensated to appear at the First Meeting, and he has not filed a statement pursuant to Section 329(a) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 2016(b), which would reveal the compensation he received. Similarly, Mr. Ragues has failed to disclose any fee sharing arrangements as required by Section 329(a) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 2016(b). *See* Disclosure of Compensation of Attorney for Debtor [ECF No. 1] (indicating that Mr. Ragues had not

4

Tr. of March 28, 2018 Meeting of Creditors at 1, attached as Exhibit A to the Chapter 7 Trustee Statement [ECF No. 26].[6] While the Debtor knew that an attorney would represent him at the First Meeting, he did not know that it would be Mr. Zweig. *See id.* at 3.

During this First Meeting, the Debtor testified that the information in the original set of Schedules filed by Mr. Ragues with the Petition was incorrect in several significant ways: (1) the original Schedules included a bank account that the Debtor closed prior to the filing of the Petition; (2) the original Schedules reported that the Debtor had previously sought bankruptcy relief when he had not; and (3) the original Schedules improperly listed student loan obligations. *See id.* at 2. The Debtor testified that he had identified those errors and reported them to Mr. Ragues in November 2017—before the Petition and the original Schedules were filed—but that these errors had not been corrected. *See id.* at 2-3. During the First Meeting, the Debtor also explained that the Petition contained a version of his signature that did not match the signature he affixed to the Petition and original Schedules. *See id.* at 5. At no point during the First Meeting did appearance counsel Mr. Zweig assist the Debtor or the Chapter 7 Trustee in addressing any of these concerns. In fact, Mr. Zweig was not at all familiar with the Debtor's case. *See id.* at 2, 4-5.

At the conclusion of the First Meeting, the Chapter 7 Trustee explained that he could not examine the Debtor without the correct schedules so he adjourned the examination to April 18,

---

agreed to share his compensation with any other person unless they were members or associates of his firm). The failure to disclose any such compensation is improper. *See In re Ortiz*, 496 B.R. 144, 150 (Bankr. S.D.N.Y. 2013) ("[A]ny attorney who appears on behalf of a debtor at a § 341(a) meeting, and receives compensation for such appearance, must file his or her own Rule 2016(b) statement disclosing such compensation.") (internal citations omitted).

[6]    The audio of the First Meeting—and a subsequent 341 meeting—were both recorded by a device provided by the Office of the United States Trustee. No court reporter or stenographer was present, but the audio of the two 341 meetings was transcribed by an employee of the Chapter 7 Trustee and provided to the Court as an exhibit to the Chapter 7 Trustee's Statement. *See* Tr. of March 28, 2018 Meeting of Creditors at 1. No party has objected to the Court considering the transcript of the two 341 meetings.

5

2018, so that the Mr. Ragues could file corrected schedules. *See id.* at 3, 5. The Chapter 7 Trustee also told Mr. Zweig to have Mr. Ragues meet with the Debtor to correct the schedules. *See id.* at 5. Of course, all this meant a second trip downtown for Mr. D'Arata, a particular hardship for this disabled Debtor. *See* Letter of Vincent D'Arata, dated April 2, 2018 (Debtor noting that he is disabled).

Things continued to go downhill after the First Meeting. On April 2, 2018 and April 4, 2018, the Debtor sent letters to the Court, which explained that he had been unable to contact Mr. Ragues, that Mr. Ragues failed to correctly amend his Schedules, and that incorrect information had been provided to the Chapter 7 Trustee. *See* ECF Nos. 13, 19. Mr. Ragues did not respond to those letters, or at least no response was ever filed by Mr. Ragues with the Court. *See* Chapter 7 Trustee Statement ¶ 9. It was not until April 17, 2018—only one day prior to when the 341 meeting was scheduled to resume—that Mr. Ragues finally filed an amended voluntary petition, amended Schedules, and amended Summary of Assets and Liabilities and creditor matrix [ECF Nos. 15-18].

On the morning of April 18, 2018, the Debtor once again appeared and testified under oath at the adjourned 341 Meeting (the "Second Meeting"). *See* UST Statement ¶ 22. Mr. Ragues again chose not to appear. *See id.* Instead, Mr. Ragues sent another appearance counsel to represent the Debtor. *See id.* at ¶ 23. This appearance counsel was not even the same lawyer that appeared at the First Meeting. *See id.* To make matters worse, this second lawyer—Sanam Nowrouzzadeh, Esq.[7]—advised the Chapter 7 Trustee that she had never met the Debtor before

---

[7] While Ms. Nowrouzzadeh was paid an appearance fee, *see* UST Statement ¶ 23, once again no statement was filed as required under Section 329(a) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 2016(b) to reflect the payment. *See In re Ortiz*, 496 B.R. at 150.

6

the morning of April 18, 2018, and that she was not informed prior to April 18th about the issues relating to the Debtor's filings. *See id.* at ¶¶ 23, 27; *see also* Tr. of April 18, 2018 Meeting of Creditors at 5, attached as Exhibit B to the Chapter 7 Trustee's Statement [ECF No. 26] (Ms. Nowrouzzadeh noting that she had learned of the problems at the last examination only on the morning of the Second Meeting, and not in time to have a meaningful consultation with the Debtor). Thus, like Mr. Zweig, Ms. Nowrouzzadeh was unable to adequately represent the Debtor.

At the Second Meeting, the Debtor explained that the amended Schedules were still not correct. *See* Tr. of April 18, 2018 Meeting of Creditors at 4. The Debtor also testified during the Second Meeting about other problems in his case, including that:

- Mr. Ragues failed to advise Mr. D'Arata that he would not appear at the Second Meeting and would send another appearance counsel whom the Debtor had never met;

- Mr. Ragues failed to obtain the Debtor's consent to file the amended Schedules; and

- Without the Debtor's review or approval, Mr. Ragues affixed a copy of Mr. D'Arata's signature from a different document to the amended Schedules and filed them.

*See id.* at 1, 3-4.

In response to the Debtor's letters, the Court issued the Order to Show Cause upon Mr. Ragues. *See* ECF No. 21. Both the United States Trustee and the Chapter 7 Trustee filed statements in support of requiring Mr. Ragues to disgorge the fee that he received from the Debtor. *See* ECF Nos. 25, 26. The Chapter 7 Trustee's Statement vigorously requested that the use of appearance counsel for 341 meetings be banned by the Court. *See* Chapter 7 Trustee Statement ¶ 26. Additional filings in response to the Order to Show Cause were submitted by other members of the bar who serve as Chapter 7 trustees, who have experienced problems with the use of appearance counsel. *See* Letter of Alan Nisselson, Esq., dated May 7, 2018 [ECF No.

7

30]; Letter of Robert L. Geltzer, Esq., dated May 10, 2018 [ECF No. 38]; Letter of Kenneth P. Silverman, dated May 17, 2018 [ECF No. 37]. Despite not having filed any written response to the Order to Show Cause, Mr. Ragues attended the hearing held on the Order to Show Cause on May 1, 2018. *See* Hr'g Tr. at 3:2-9, May 1, 2018 [ECF No. 31].

## **DISCUSSION**

Section 329(b) of the Bankruptcy Code authorizes the denial of compensation to debtor's counsel, the cancellation of his or her employment agreement with the debtor, or the return of compensation paid, if the Court finds that the compensation paid exceeds the reasonable value of the legal services provided. *See* 11 U.S.C. § 329(b). Section 329(b) provides, in relevant part:

> [if] such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to . . . (2) the entity that made such payment.

*Id.* On the motion of a party in interest, Federal Rule of Bankruptcy Procedure 2017(a) directs the Court to determine whether any payment or transfer of property to an attorney "in contemplation of the filing" of the bankruptcy petition "is excessive." Fed. R. Bankr. P. 2017(a).

In evaluating the value of legal services under Section 329(b), "the question is whether the [sum] he was paid was excessive for what he accomplished for debtor in this case." *In re Nakhuda*, 544 B.R. 886, 903 (9th Cir. 2016) (upholding disgorgement of fees paid where debtor's attorney filed documents in violation of local electronic filing orders). The Court has wide discretion in making this determination so long as the fees at issue are evaluated in light of the services actually performed. *See Karsch v. LaBarge (In re Clark)*, 223 F.3d 859, 863-64 (8th Cir. 2000). "The Court may reduce the compensation if it finds that the amount requested is excessive or of poor quality." *In re Carmine Alessandro*, 2010 WL 3522255, at *2 (Bankr. S.D.N.Y. Sept. 7, 2010). The value of legal services is lessened where an attorney has violated

8

an ethical standard. *See In re Damon*, 40 B.R. 367, 376 (Bankr. S.D.N.Y. 1984) (holding that forfeiture of attorney's fee is mandated where an ethical standard is violated).

Applying the standards under Section 329, the Court easily concludes that Mr. Ragues should return the fee to the Debtor. In short, Mr. Ragues did not adequately represent his client Mr. D'Arata, either in the documents that were filed or at the 341 meetings. Courts have ordered attorneys to disgorge fees in such circumstances. *See generally In re Olson*, 2016 WL 3453341 (Bankr. D. Idaho June 16, 2016) (requiring counsel to show cause why disgorgement should not be ordered when, among other things, neither the debtor's attorney nor either of the replacement attorneys appeared at the debtor's initial 341 meeting, the debtor's attorney and the appearance counsel failed to file disclosures of the fee sharing arrangement within the required time frame, failed to obtain the debtor's informed consent with respect to the representation, and failed to adequately represent the debtor); *In re Al-Sammak*, 2016 WL 3912375 (Bankr. D. Idaho July 12, 2016) (companion case to *Olson* directing disgorgement); *In re Harwell*, 439 B.R. 455 (Bankr. W.D. Mich. 2010) (ordering the debtor's attorney to disgorge his fees when debtor's chosen law firm failed to attend the 341 meeting and instead sent appearance counsel, and failed to properly disclose the fee sharing arrangement it had with appearance counsel); *In re Castorena*, 270 B.R. 504 (Bankr. D. Idaho 2001) (ordering attorney to disgorge fees paid by Chapter 7 debtors when, among other things, the attorney failed to adequately describe the services he provided and prepared amended schedules because the original schedules all contained errors); *see also In re Ortiz*, 496 B.R. at 148 (ordering firm to properly represent debtor where debtor's counsel failed to fulfill his duty to "shepherd the client through the bankruptcy process, to its conclusion.").[8]

---

[8]  While the issue in *Ortiz* was framed as a failure to disclose the sharing of fees, the Court noted that "[a] lawyer who agrees to represent a debtor in a consumer bankruptcy case must act as his or her attorney for all 'normal, ordinary, and fundamental aspects' of the case, including amendments to the schedules and other routine representation necessary to ensure that the debtor receives a discharge." *In re Ortiz*, 496 B.R. at 150-51.

9

Indeed, this case starkly highlights the perils of the use of appearance counsel. Such counsel are attorneys who appear at proceedings at the request of, and on behalf of, the debtors' chosen attorney. *See In re Bradley*, 495 B.R. 747, 757 n.1 (Bankr. S.D. Tex 2013). As other courts have observed, these lawyers are generally not disclosed to the Court or to the Chapter 7 trustee before their appearance, and debtors are usually unaware that an appearance attorney will be representing them until right before the meeting or hearing. *See id.* Compounding these problems is that appearance counsel often know little or nothing about the case. For these reasons, various courts have frowned on the use of appearance counsel in circumstances like those present here. *See In re Cochener*, 360 B.R. 542, 580 (Bankr. S.D. Tex. 2007) (recognizing that counsel for a debtor "owes a professional duty to the [judicial] system to appear at the [341 meeting]"); *see generally In re Bradley,* 495 B.R. 747 (criticizing and banning the use of appearance counsel); *In re Olson,* 2016 WL 3453341; *In re Al-Sammak,* 2016 WL 3912375; *In re Bernhardt*, 2012 WL 646150 (Bankr. D. Colo. Feb. 28, 2012); *In re Harwell*, 439 B.R. 455; *In re Jacobson,* 402 B.R. 359 (Bankr. W.D. Wash. 2009); *see also In re Castorena,* 270 B.R. 504, 529-32 (Bankr. D. Idaho 2001) (criticizing and requiring the attorney to disgorge his $250 flat fee, which the court found was unreasonable given the services he provided); *In re Ortiz,* 496 B.R. at 150 (holding that "appearance counsel may not 'represent' the debtor in the bankruptcy case"); *In re Seare,* 493 B.R. 158 (Bankr. D. Nev. 2013) (sanctioning debtor's attorney that failed to fulfill his professional duty of competence, unreasonably "unbundled" legal services, and failed to perform reasonable investigation into circumstances that gave rise to the bankruptcy filing); *In re Egwu,* 2012 WL 5193958 (Bankr. D. Md. Oct. 19, 2012); *In re Johnson,* 411 B.R. 296 (Bankr. E.D. La. 2008); *In re Bancroft,* 204 B.R. 548 (Bankr. C.D. Ill. 1997).

As courts have observed, improper use of appearance counsel can "frustrate the negotiation and communication process among the debtor, the creditors, and the trustee." *In re Bradley*, 495 B.R. at 804; *see also In re Jacobson,* 402 B.R. at 365 ("[t]he practice of undisclosed 'appearance attorneys' creates problems—other parties (and the court) are sandbagged, and the [d]ebtor, trustee, other creditors, and counsel cannot readily communicate regarding scheduling or substance."). Moreover, appearance counsel can promote a lack of accountability:

> Appearance attorneys are rarely listed as an attorney of record or co-counsel in a case and this can raise questions as to the legitimacy of their representation of debtors and their authority to speak for, or make admissions on behalf of, the debtor. While many appearance attorneys are competent lawyers, others are '[m]ere drones who give inadequate representation.' If a court cannot determine who has the authority to speak on behalf of a debtor, a sizeable and unnecessary roadblock is thrown up in front of the bankruptcy process. The court overseeing a bankruptcy case must know who speaks for a debtor and whom it can hold accountable for any improprieties in the process.

*In re Bradley*, 495 B.R. at 804 (internal citations omitted). Under such circumstances,

> debtors are left in an awkward position of having to trust the work of an attorney with whom they have never met and did not hire. They must have faith that their own attorney has exercised good judgment and has chosen a quality lawyer to appear on his behalf. Such practices can leave clients vulnerable to substandard representation and attorneys vulnerable to sanctions and other disciplinary measures.

*Id.* (internal citations omitted).

Not surprisingly then, the use of appearance counsel here violated a number of New York's Rules of Professional Responsibility. For example, it violated two requirements by failing to obtain the Debtor's informed consent when using appearance counsel at the two 341 meetings. *See* N.Y. R. Prof. Conduct 1.2(c) (allowing a lawyer to limit the scope of representation if such limitation is reasonable and the client gives informed consent); N.Y. R. Prof. Conduct 1.4 (requiring a lawyer to promptly inform client of, among other things, any

11

decision or circumstance with respect to which the client's informed consent is required by the Professional Rules); *In re Bradley,* 495 B.R. at 805 (observing that "the client did not hire the appearance attorney, and, almost always, the client has little or no say as to whether the attorney they *did* hire will represent them at any given proceeding.") (emphasis in original); *In re Bernhardt*, 2012 WL 646150, at *5 (holding that failure to disclose the use of substitute attorneys in advance of those attorneys' appearances, deprived debtors of an opportunity to consent to the appearances). Mr. Ragues also violated Rule 5.1(b)(2) of the New York Rules of Professional Conduct when he failed to ensure that appearance counsel was adequately prepared to address the issues at the 341 meetings, thus leaving the Debtor with counsel in name only. *See* N.Y. R. Prof. Conduct 5.1(b)(2) (requiring that a lawyer with direct supervisory authority over another lawyer make reasonable efforts to ensure that the supervised lawyer conforms with the Professional Rules).

In his submission, the Chapter 7 Trustee sums up the real world consequences of the improper use of appearance counsel at a 341 meeting in a case like this one, noting that individual debtors such as Mr. D'Arata

> most often have never hired a lawyer. They are overwhelmed by debt. They are in need of help. They nearly all are honest debtors. They are not proud to be filing for bankruptcy. The day they appear for examination by the trustee is the lowest day of their lives. If ever there was a day when they need the help of their lawyer, it is the day of their § 341 examination.

Chapter 7 Trustee Statement at 2.[9] And as another attorney who serves as a Chapter 7 trustee observed:

---

[9] *See also* Chapter 7 Trustee Statement at 2 (noting that in cases like this one, debtors "are effectively abandoned and left unprotected because their lawyer sends a 'per diem' appearance counsel to the first meeting of creditors who had nothing to do with consulting with the Debtor or preparing his petition, who had never even met the debtor until immediately before the trustee's examination, who has only the most superficial knowledge of the facts of the case, and who is unprepared to answer the trustee's questions or provide meaningful assistance at the first meeting of creditors.").

12

> Generally, the use of Appearance Counsel is problematic. By the nature of such assignment, Appearance Counsel is unfamiliar with the case and the pleadings filed in support of the case. Thus, any problems that may arise as a result of the trustee's review of debtor's schedules and SOFA or debtor's testimony cannot be resolved at the initial 341 Meeting. As appears to be the case regarding the above-referenced Debtor, the trustee's directions to Appearance Counsel often go unresolved either because they are not communicated to the retained counsel or a lack of communication between Appearance Counsel and debtor's retained counsel.

Letter of Alan Nisselson, Esq., dated May 7, 2018. As further noted by another Chapter 7 trustee in this jurisdiction:

> Per diem attorneys appear—purportedly on behalf of a debtor/client—not even knowing who the person is. They appear not knowing, not having, and having never even seen the file. They appear with no authority to act on behalf of the debtor in even the simplest situations as, for example, agreeing to an extension of time to object to discharge in situations where, for example, the trustee has not been sent the petition and schedules, tax returns, pay stubs, and/or Consumer Credit Counseling Certificate, or received documents requested by the trustee upon his or her thorough review of the schedules prior to the 341 meeting. *Such inappropriate activity disserves debtors who might, consequently, be compelled to return to an adjourned 341 meeting which they would not otherwise have to do.*

Letter of Robert L. Geltzer, Esq., dated May 10, 2018 (emphasis added).

All these significant concerns are only heightened by the apparently widespread (and increasing) use of appearance counsel in Chapter 7 cases. While the Court is not in a position to assess such trends directly—because the Court does not participate in 341 meetings—members of the bar who serve as trustees in Chapter 7 cases have helpfully provided information about current trends. They paint a disturbing picture. Indeed, one Chapter 7 trustee in this jurisdiction stated that use of appearance counsel at 341 meetings "has substantially increased in frequency in recent years and has become, unfortunately, a common practice in the Southern District." Letter of Kenneth Silverman, Esq., dated May 17, 2018; *see also* Letter of Alan Nisselson, dated May 7, 2018 ("[I]t is often the case that over 50% of represented debtors on any 341 meeting calendar day are covered by Appearance Counsel.").

13

The Chapter 7 Trustee here urges that the Court bar the use of appearance counsel in its entirety for 341 meetings. *See* Chapter 7 Trustee Statement ¶ 26 ("The Trustee respectfully submits that the Court should ban the use of appearance counsel altogether at 341 meetings in the Southern District of New York."). The Chapter 7 Trustee cites to a number of jurisdictions that have promulgated such local rules as to appearance counsel. *See, e.g.,* E.D.N.Y. LBR 2090-2(a) (an attorney of record for a debtor who is knowledgeable in all aspects of a debtor's case shall appear on behalf of such a debtor in *every* aspect of the case, including but not limited to appearances at a 341 meeting, any adjournments of such meetings, and defending contested matters, motions, or adversary proceedings); N.D.N.Y. LBR 2016-3(b) (lists required duties of an attorney representing a Chapter 7 debtor, including appearing personally and representing the debtor at any scheduled 341 meeting). But rather than ban appearance counsel in cases before only one judge in this jurisdiction, the Court believes that the entire Court should first consider the wisdom of enacting a local rule to address these issues. In the meantime, the Court will be exceedingly vigilant on this issue and encourages the reporting of any instance where a counsel is failing to meet his or her obligations to a debtor, including, but not limited to, failing to personally appear with the debtor at a 341 meeting.

Of course, the Court's ruling today is not an indictment of attorneys who satisfy the requirements for serving as appearance counsel. The Court has seen many such instances of appearance counsel in Chapter 13 cases, often involving solo practitioners or small firms who ably and honorably serve as a support system for one another and who appear in Court well prepared to represent a debtor. But sadly, it appears that the requirements for appearance

14

counsel are often "[m]ore honour'd in the breach than the observance." William Shakespeare, Hamlet, act 1, sc. 4.[10]

## CONCLUSION

For the reasons set forth above, the Court concludes that the compensation provided by the Debtor to Mr. Ragues exceeds the value of the services provided by Mr. Ragues due to Mr. Ragues' failure to provide adequate representation at the Debtor's 341 meetings.[11]

Dated: New York, New York
August 3, 2018

                                                            */s/ Sean H. Lane*
                                                            UNITED STATES BANKRUPTCY JUDGE

---

[10] In reaching its conclusion today, the Court does not rule upon the allegation that Mr. Ragues filed documents without the signature or approval of his client, Mr. D'Arata. The lack of a ruling on that issue does not in any way suggest that this allegation is not an exceedingly serious one. Filing documents with the debtor's electronic signature, without first obtaining his actual signatures or consent to such filings, would run afoul of New York's Rules of Professional Conduct. N.Y. Rule of Professional Conduct 8.4(c) provides that "[a] lawyer or law firm shall not . . . (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation." N.Y. R. Prof. Conduct 8.4(c). The electronic filing of a document that purports to have the debtor's signature but, that is not, in fact, signed by the debtor, "is no different than physically forging the debtor's signature on a paper document." *In re Stomberg*, 487 B.R. 775, 808 (Bankr. S.D. Tex. 2013) ("[M]ultiple bankruptcy courts have found that 'electronically filing a document bearing an electronic signature that was not actually or validly signed' constitutes a forgery amounting to a Rule 9011 violation."); *In re Obasi*, 2011 WL 6336153, at *3 (Bankr. S.D.N.Y. Dec. 19, 2011) ("While the parties have debated whether the conduct at issue violates the rules regarding the electronic filing of documents, the Court believes the real issue concerns an attorney's obligations when submitting documents to the Court. Those obligations are governed by Bankruptcy Rule 9011."); *see also United States Bankruptcy Court Southern District of New York Procedures for the Filing, Signing, and Verification of Documents by Electronic Means* (June 17, 2013), http://www.nysb.uscourts.gov/sites/default/files/5005-2-procedures.pdf (providing, among other things, that petitions, lists, schedules, statements, amendments, pleadings, affidavits, stipulations and other documents must contain original signatures). But there appears to be a factual dispute as to whether such an unauthorized filing took place, and such a dispute could not be resolved without an evidentiary hearing. As the Court has ample basis to require that the fees here be returned without reaching that issue, the Court concludes that it would be unjust and inappropriate to subject Mr. D'Arata to further proceedings in Court if that can be avoided.

[11] It is the Court's understanding that the filing fee has already been returned by Mr. Ragues to the Debtor, in accordance with an order issued by the Court on June 27, 2018 [ECF No. 32].